THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ROY C. BLAKENEY *et al.*, Defendants-Appellants.

First District (2nd Division)   No. 77-346

Opinion filed April 4, 1978.—Rehearing denied May 2, 1978.

Julius Lucius Echeles and Sherman C. Magidson, both of Chicago (Carl J. Clavelli, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Kenneth McCurry, and Richard Heytow, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DOWNING delivered the opinion of the court:

In a bench trial, defendants were convicted of attempt (burglary) (Ill. Rev. Stat. 1975, ch. 38, par. 8—4) and possession of burglary tools (Ill. Rev. Stat. 1975, ch. 38, par. 19—2). Each received a single sentence of one to three years in the Illinois State Penitentiary. They appeal from their convictions, raising issues of whether there was a fatal variance between the offense alleged in the information and the proof at trial, and whether their convictions for both attempt and possession of burglary tools were proper. The State has not filed a cross-appeal under Supreme Court Rule 604(a) (Ill. Rev. Stat. 1977, ch. 110A, par. 604(a)), but requests that the case be remanded for imposition of a separate sentence for each offense.

Defendants' convictions arose from an aborted burglary of the Lampert Jewelry store in a shopping center at 8800 W. Dempster Street in Niles, Illinois. One door to the east of the jewelry store is a barber shop called the House of Capelli. Just east of the barber shop is a beauty shop, the Hair Styling and Wig Salon. The rear portion of the beauty shop extends behind the barber shop. Thus, Lampert's share a common wall with the barber shop and the beauty shop.

On Sunday evening, October 19, 1975, defendants, who had been under police surveillance for nearly a week, were followed by Chicago police investigators to the area of the Lampert store. For the next several hours, the police observed the defendants' movements in and about the shopping center, including their entry into the front door of the barber shop and into the rear door of the beauty shop.

At 9:42 p.m., the burglar alarm system in the Lampert store was activated. The defendants fled the scene in a car, followed by the police. They were arrested a short distance away. On the front seat of defendants' car was found a black, leather-like case containing a number of walkie-talkies, a police radio scanner, a flashlight, a black box with gauges and wires protruding from it, an ohmmeter, and other electronic equipment. In the trunk of the car were found: a radio crystal case; a plastic hard hat; a pair of welder's goggles; a Uniweld igniter; a ten-inch adjustable wrench; four "burning bars," approximately 60 inches long; a

metal cylinder stamped "acetylene"; a green metal cylinder possibly containing oxygen; acetylene-oxygen gauges and hoses with a control nozzle; an oxygen tank, complete with gauges, regulator, hoses, and valves; a number of chisels; two "channel" locks; screwdrivers; a crowbar; punches; an automotive ignition lock puller; an offset screwdriver; three bags, one containing torch equipment; a pair of "Bell System crimpers"; and a claw hammer.

Defendants were charged in a four-count information with burglary (Ill. Rev. Stat. 1975, ch. 38, par. 19—1) of the Lampert Jewelry store, possession of burglary tools (Ill. Rev. Stat. 1975, ch. 38, par. 19—2), and two counts of theft (Ill. Rev. Stat. 1975, ch. 38, par. 16—1(a)(1)).

Expert testimony at the trial established that a burning bar is a device which, when attached to acetylene and oxygen tanks and ignited, is capable of heating up to ten thousand degrees, sufficient to burn a hole through one-half inch thick plate steel in eight seconds. The expert testified that the burning bars found in the trunk of the defendants' car were capable of penetrating the vault on the premises at Lampert's.

Another expert witness testified that the black electronic box found on the front seat of the car was suitable only for use in preventing the activation of an electronic burglar alarm system. The wiring in the box contained one loose connection, which possibly accounted for the activation of the burglar alarm at 9:42 p.m., just prior to defendants' arrest.

Defendants presented no evidence at their trial. The court found them not guilty of the two counts of theft, but guilty of possession of burglary tools. Apparently the trial court was persuaded by defense counsels' arguments that the State had failed to present evidence of an entry into Lampert's, and thus found defendants guilty of the lesser-included offense of attempt (Ill. Rev. Stat. 1975, ch. 38, par. 8—4). Additional facts will be discussed in this opinion as they are relevant to the various issues raised in this appeal.

## I.

■■ Defendants contend their convictions should be reversed because the State proved at trial only that Lampert Jewelers, Inc., was the *lessee* of the premises, and not, as charged in the information, the *owners* of the premises. This contention would have significance only if the allegation and proof of ownership of the premises were essential to a prosecution for burglary. It is clear, however, that the State need neither allege nor prove ownership of the premises in a prosecution for burglary (*People v. Gregory* (1974), 59 Ill. 2d 111, 114, 319 N.E.2d 483), so long as the proof otherwise establishes that the entry was unauthorized, and the pleadings and proof are sufficiently specific to enable defendant to present a

defense and to protect him from a second prosecution for the same offense. *People v. Flowers* (2d Dist. 1977), 52 Ill. App. 3d 301, 304, 367 N.E.2d 453.

Count I of the information, as amended, alleged that on October 19, 1975, in Cook County, the defendants committed the offense of burglary in that they, without authority, knowingly entered into a building "owned" by Lampert Jewelers, Inc., with the intent to commit the crime of theft therein.

At trial, the State presented the testimony of Dennis Lampert, the vice-president of Lampert Jewelers, Inc. Lampert testified that he was present in the store when it closed at 6 p.m. on Saturday, October 18, 1975. The doors to the store, its vault and safe, and an iron gate across the front of the store were all closed and secured at that time. The store was also equipped with a Wells Fargo electronic burglar alarm system. The store was closed on Sunday, October 19, 1975, and he gave no one permission to enter the store that day. Lampert testified that Lampert Jewelers, Inc., an Illinois corporation licensed to do business in the State of Illinois, was the lessee of the premises. When he entered the store after the police called him, there was a large hole in the wall between his store and the beauty shop. The shelving and merchandise in that area, which had been in place when the store had closed the previous evening, were now in disarray.

Phillip Polizzi, owner of the barber shop, and Candy Fields, owner of the beauty shop, gave similar accounts of the closing of their stores on Saturday the 18th. Neither gave anyone permission to enter their respective stores on October 19, 1975.

Investigator William Erickson of the Chicago Police Criminal Investigations Unit saw defendants enter a 1975 Oldsmobile with no license plates at a motel in Elmhurst, Illinois, at 6:30 p.m. on October 19, 1975. Prior to entering the car, defendant Blakeney opened the trunk of a nearby black Buick bearing Florida license plates, and took out a small case. Erickson and other members of the police surveillance team followed defendants to the shopping center where the Lampert store is located. They arrived there at approximately 7 p.m.

At that time, Investigator Thomas Rowan was parked in an apartment complex located to the rear (north) of Lampert's. At 7 p.m., Rowan saw the defendants approach in a 1975 Oldsmobile with no license plates. Blakeney got out, entered a 1973 Oldsmobile parked next to a wooden fence which separated the apartment complex from the shopping center, and drove away. Katz, Cook, and Ristich got out of the car, walked through a hole in the fence near where the 1973 Oldsmobile had been parked, and walked up to a telephone junction box located on the back wall of Lampert's. They remained there 45 minutes. They then walked

back through the hole in the fence. A few minutes later, the 1975 Oldsmobile returned. Ritacco got out, and Ristich got in. The others entered a white Ford van also parked near the hole in the fence. Both the van and the car then drove away. They returned 15 minutes later and parked both vehicles near the fence. Ritacco and Ristich went through the hole in the fence and entered the rear door of the beauty shop. Ritacco drove away. He returned at approximately 9:45 p.m. and picked up Blakeney, Cook, Katz, and Ristich. It was stipulated by the parties that the burglar alarm system in the Lampert Jewelry store was activated at 9:42 p.m.

Investigator Phillip Michaels testified that he was on duty in an unmarked car in the parking lot of the shopping center at 7 p.m. on October 19, 1975. At 7:45 p.m., he saw Ritacco driving a white van pull into the lot, followed by Ristich in the 1975 Oldsmobile. Ritacco parked in front of the barber shop. Katz and Cook got out of the van and walked up to the door to the barber shop. The door opened, and they entered. The van and the 1975 Oldsmobile then drove away. Ritacco returned in the 1975 Oldsmobile at 8 p.m. and parked near Lampert's. He did not get out. He drove away 15 minutes later, and returned again at 8:45. This time he remained there for about an hour before again driving away.

Defendants were arrested after they left the rear of the shopping center.

Officer Arnold Baltzersen of the Niles Police Department received a radio communication to go to Lampert's at 9:43 p.m. When he arrived there, everything in the front of the store appeared to be in order. He drove around to the back of the shopping center where he observed that the door to the beauty shop was open. He also saw a wire strung between the telephone junction box and a nearby window. Baltzersen then entered the beauty shop, where he observed a large hole in the wall leading into Lampert's. A sledge hammer and a pry bar were found nearby.

■■ These facts, in our opinion, are sufficient to meet the standards set forth in *Gregory* and in *Flowers.* The proof established the exact address of the premises and the time and date of the attempted entry thereof by defendants. There is no doubt that the information, pleadings, and proof at the trial, as well as this opinion, will stand as a bar to a second prosecution of the defendants. See *People v. Knox* (1st Dist. 1968), 98 Ill. App. 2d 270, 240 N.E.2d 426.

■■■ Defendants also contend that the State failed to present proof that their entry into the Lampert Jewelry store was unauthorized. The nature of the crime of burglary is such that its elements may be proved by circumstantial evidence and the inferences drawn therefrom. (*People v. Palmer* (1964), 31 Ill. 2d 58, 66, 198 N.E.2d 839.) Where an information charges burglary, the fact that an entry was unauthorized is an essential

element of the State's case in chief. However, this element of the offense, like any other, may be proved by circumstantial evidence. (See *Flowers*, 52 Ill. App. 3d 301, 303; see also *People v. Darrah* (2d Dist. 1974), 18 Ill. App. 3d 1018, 1022, 310 N.E.2d 448.) Here, the circumstantial evidence established beyond a reasonable doubt that defendants' attempted entry into Lampert Jewelry store was unauthorized. And it should be remembered that Dennis Lampert testified that he gave no one permission to enter the store on October 19, 1975.

## II.

■■ Defendants contend that their convictions for both attempt robbery and possession of burglary tools may not stand because the acts which constituted each offense were not independently motivated or otherwise separable. Our supreme court recently rejected the independent motivation test for determining when multiple judgments of conviction and concurrent sentences may be entered where the convictions arise out of a series of closely related acts in *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838. In *King*, the court held that when more than one offense arises out of a series of incidental or closely related acts and the offenses are not, by definition, lesser-included offenses, multiple convictions with concurrent sentences may be entered. (66 Ill. 2d 551, 566.) Possession of burglary tools is not a lesser-included offense with respect to attempt burglary, since proof of such possession is not necessary to establish attempt, and there is no element which serves as a common denominator of the offenses. (*People v. Szymezak* (1st Dist. 1969), 116 Ill. App. 2d 384, 253 N.E.2d 894 (abstract).) There is no merit to defendants' contention.

## III.

In its brief, the State notes that although defendants were convicted of two offenses—attempt (burglary) and possession of burglary tools—only one sentence was imposed. The State requests that the case be remanded for the imposition of a separate sentence for each offense.

Final judgment in a criminal case is not entered until the imposition of the sentence; the final judgment in a criminal case is the sentence. (*People v. Warship* (1974), 59 Ill. 2d 125, 130, 319 N.E.2d 507.) In *People v. Scott* (1977), 69 Ill. 2d 85, 370 N.E.2d 540, our supreme court recently affirmed a decision of the appellate court (*People v. Scott* (1st Dist. 1977), 45 Ill. App. 3d 487, 359 N.E.2d 878) which affirmed the convictions of a defendant and remanded for the imposition of separate sentences for each offense. (69 Ill. 2d 85, 88-89.) The court stated that the effect of such remand is to complete the circuit court's order and render the judgment final (69 Ill. 2d 85, 89), and is within the court's powers under Supreme

Court Rule 366 ("Powers of Reviewing Court; Scope of Review and Procedure; Lien of Judgment," Ill. Rev. Stat. 1977, ch. 110A, par. 366) (69 Ill. 2d 85, 88, see also *People v. Griffin* (3d Dist. 1977), 56 Ill. App. 3d 255, 371 N.E.2d 1160).

Defendants contend, citing *People v. Griggs* (1st Dist. 1977), 51 Ill. App. 3d 224, 366 N.E.2d 581, decided prior to the supreme court's ruling in *Scott*, that because they have not specifically challenged the propriety of the sentence imposed by the trial court, the State's request for a remand is improper. There is no such requirement in *Scott*, although there the supreme court expressly declined the opportunity to discuss the issue of whether, absent an appeal by defendant, the *State* could have raised the issue in an appeal. 69 Ill. 2d 85, 87.

■■ In pronouncing a single sentence on the defendants in the case at bar, the trial court did not indicate whether it was for the crime of attempt, or for possession of burglary tools, or both. Under *Scott*, therefore, the judgments are incomplete, and we are compelled to remand for the imposition of separate sentences for each offense so that the judgments may be rendered final.

Affirmed and remanded.

STAMOS, P. J., and BROWN, J., concur.